UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JACK LAMANTIA,  :
 :
                Plaintiff,  :  **OPINION AND ORDER**
 :  05-CV-3300 (DLI)(SMG)
    -against-  :
 :
KEYSPAN ENERGY,  :
 :
                Defendant.  :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Jack Lamantia ("Plaintiff" or "Lamantia") commenced this action against his former employer Keyspan Energy ("Defendant" or "KeySpan") alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 100 et seq, stemming from Defendant's denial of severance benefits to Plaintiff when he left Defendant's employ in May 2004.[1] Defendant moved for summary judgment on the grounds that (1) as a matter of law, the severance package offered to management employees who suffered involuntary job loss is not an ERISA covered plan, and (2) there are no genuine issues of material fact with respect to Plaintiff's ineligibility to receive the severance package. For the reasons set forth below, Defendant's motion for summary judgment is granted.

**I.    Facts**

Plaintiff began working for the Brooklyn Union Gas Company ("Brooklyn Union"), predecessor to Defendant KeySpan Energy, on August 1, 1974. Complaint ¶ 6. During his tenure

---

[1] Plaintiff also brought a claim pursuant to "New York State Human Rights Law ("NYSHRL") § 296 but has voluntarily dismissed that claim. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition") 7.

1

with Brooklyn Union and then with Defendant, Plaintiff held a number of different positions. From June 1998 until he officially retired on May 1, 2004, Plaintiff held the title of "Lead Analyst in Health and Safety." Defendant's Statement of Undisputed Material Facts ("Def. Stat. of Facts") ¶ 3. This was a management position and, therefore, Plaintiff was not a party to any collective bargaining agreement. *Id.* ¶ 4.

Prior to September 2003, KeySpan's retirement plans for management employees allowed management employees to retire with a full pension after age fifty-five, assuming they had worked for Defendant for thirty years (the "Rule of 85"). Affidavit of Justin Orlando ("Orlando Aff.") ¶ 4. In September 2003, Defendant amended its management retirements plans to allow management employees who were at least fifty-two years old to retire as long as they had been working for Defendant for twenty-eight years (the "Rule of 80 Amendment"). *Id.* A copy of the Rule of 80 Amendment is annexed to the Orlando Aff. as Exhibit 1. The Rule of 80 Amendment was meant to encourage voluntary retirements of older workers in an effort to "achieve reductions in KeySpan's overall staffing levels and cost structure." *Id.*

In addition to the Rule of 80 Amendment, in an effort to encourage eligible management employees to take the early retirement option, KeySpan offered an "enhanced" retirement plan that guaranteed the amount of a retiree's medical and dental contributions would not increase for ten years (through December 31, 2013). *Id.* The enhanced retirement plan was only available for eligible management employees who opted to retire between September 1, 2003, and January 1, 2004. Orlando Aff. ¶ 6.

The amendments to the management retirement plan and the plan enhancement were communicated to Plaintiff at sometime between September 1, 2003, and December 16, 2003. Def.

Stat. of Facts ¶¶ 6-7. During that time, Plaintiff realized that he was eligible for the early retirement and the plan enhancement because he was fifty-three years old and had worked for KeySpan and Brooklyn Union for a total of twenty-nine years. Affidavit of Jack Lamantia ("Lamantia Aff.") ¶ 4. On December 16, 2003, Plaintiff decided to retire and submitted the in the necessary paperwork. *Id;* Def. Stat. of Facts ¶ 13; Orlando Aff. Exhibit 2.

While Plaintiff was considering early retirement with the enhanced benefit, he also was actively searching for another job. Def. Stat. of Facts ¶ 15. As January 1, 2004 approached, however, Plaintiff still had not secured another job. Orlando Aff. Exhibit 3. Plaintiff realized that he had two options – either take the early retirement option with the enhancement without securing another job, or keep working for Defendant and thereby forfeit the enhancement. *Id.* Not please with either option, Plaintiff requested that Defendant extend the enhancement for a few more weeks, which would allow him to secure another job *and* receive the enhancement. *Id*; Orlando Aff. ¶ 9. Orlando, KeySpan's Vice President for Human Resources, explained to Plaintiff that, in order to be eligible for the enhancement, he would have to retire by January 1, 2004, and that, if he was paid as an employee in January 2004, he would lose the enhancement. *Id;* Orlando Aff. Exhibit 3. Plaintiff decided not to retire and thereby forfeited the enhancement. Lamantia Aff. ¶ 4.

As part of its continuing effort to reduce its work force, KeySpan introduced a severance plan for management employees who were involuntarily terminated between January 1, 2004, and March 31, 2004. Orlando Aff. ¶ 13 and Exhibit 5. Under the management severance plan effective January 1, 2004, management employees were eligible for a one-time severance payment if he experienced "[i]nvoluntary (other than for cause) termination of service" between then and March 31, 2004. *Id.* The amount of the benefit was commensurate with the amount of time that the

employee had worked at KeySpan with the employee's salary as of the date of involuntary termination. *Id.* Plaintiff had worked at KeySpan and Brooklyn Union for a total of twenty-nine and one-half years as of January 1, 2004, and was earning $108,200. Thus, if Plaintiff was involuntarily terminated between January 1, 2004, and March 31, 2004, he would be eligible for fifty-six weeks of base pay. Orlando Aff. Exhibit 5; Affidavit of Vincent Brandi ("Brandi Aff.") Exhibit 1.

Plaintiff alleges that he learned about the management severance plan "in or about the same time" he learned about the other modifications to the retirement plan and the plan enhancement – between September 2003 and December 2003. Lamantia Aff. ¶ 5. Indeed, the materials circulated to management employees regarding the Rule of 80 Amendment and the enhancement alludes to the possibility that severance would be offered after January 1, 2004 to management employees whose positions were terminated. The Rule of 80 Amendment, however, explicitly states that "[t]here is no guarantee that your position will be deemed excess and targeted for severance. . ." Orlando Aff. Exhibit 1. According to Defendant, only those management employees whose positions were to be involuntarily terminated were given the details of the severance plan. Def. Stat. of Facts ¶ 24. Plaintiff never states that he was provided the details of the severance package through official channels.

In March or April 2004, Plaintiff asked his direct supervisor, Vincent Brandi, the manager of the Heath & Safety – Financial and Employee Related Services Department, whether KeySpan was considering eliminating his position, thereby making him eligible for the severance package. *Id.* at ¶ 25. Brandi told Plaintiff that he was unaware of any plans to eliminate Plaintiff's position but that he would check with his supervisor. Brandi Aff. ¶ 12. Stephanie Shepard, Brandi's supervisor, told Brandi that there were no plans to eliminate Plaintiff's position, and, if Plaintiff

4

remained with KeySpan, there would be a position available for him. *Id.* at 14. Indeed, on January 14, 2004, Brandi reviewed Plaintiff's work and found that Plaintiff "creates exceptional value." Brandi Aff. Exhibit 2. It is undisputed that Plaintiff was never told that his position would be eliminated and that he would be entitled to severance. Lamantia ¶ 8.

Effective May 1, 2004, Plaintiff voluntarily retired from KeySpan and, although he received an unreduced retirement benefit pursuant to the Rule of 80 Amendment, he did not receive the enhanced benefit. *Id.* ¶ 9; Def. Stat. of Facts ¶ 40.

Subsequent to his May 2004 retirement, Plaintiff learned that his position, Lead Analyst in Health and Safety, was never filled. Lamantia Aff. ¶ 10. Based on the fact that the position had not been filled, Plaintiff "suspected that it was in fact eliminated." *Id.* Plaintiff wrote a letter to Defendant's chief executive officer, Bob Catell, inquiring why he did not receive a severance package since his position was never "filled" and, in fact, may have been split into two lower paid positions. A copy of Plaintiff's Letter dated January 20, 2005 is annexed to the Lamantia Aff. The letter goes on to note that "I was further informed that it appears that due to budgetary reductions that my position may be eliminated in 2005, as I predicted." *Id.* Defendant wrote back several weeks later to explain that "your previous position has not yet been filled . . . not because the position has been excised but rather that the area has gone through a major reorganization. A great deal of the work for which you were responsible, has been reassigned to other employees in the area." Def. Stat. of Facts ¶ 43, Exhibit 3. There is no dispute that Plaintiff's former position has not been filled, although it is unclear whether or not it has been eliminated.

## II.     Discussion

*Standard of Review*

Summary judgment should be granted where, when viewed in the light most favorable to the non-moving party, the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrettt,* 447 U.S. 317 (1986).  Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991).  The Supreme Court has recently revised the summary judgment standard by requiring the court essentially to weigh the evidence presented by the non-moving party before allowing that evidence to be used to defeat a motion for summary judgment.  Under the new standard, evidence presented by the non-moving party that is "blatantly contradicted by the record" should not be accepted by the court for purposes of defeating a motion for summary judgment. *Scott v. Harris*, 127 S.Ct. 1769, 1776, (2007).  In opposing a motion for summary judgment, Fed. R. Civ. P. 56(e) requires that affidavits be based on personal knowledge and admissible evidence.  Fed. R. Civ. P. 56(e). Mere conclusory allegations, speculation or conjecture, however, will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

*Defendant's Failure to Contest Plaintiff's Statement of Uncontested Material Facts*

In a document entitled "Plaintiff's Statement of Undisputed Material Facts," Plaintiff states

that he "agrees with Defendant's Statement of Undisputed Material Facts 1 though 45," which, apparently, is every fact put forward by Defendant. *See* Plaintiff's Statement of Undisputed Material Facts ("Pl. Stat. of Facts") ¶ 1. Defendant correctly argues that, by agreeing that there are no issues of material fact, Plaintiff has conceded that there are no issues for a fact finder to consider and, therefore, summary judgment is appropriate. Because Plaintiff has not contested the Defendant's statements of undisputed material fact, they are deemed admitted.

*Whether the Severance Plan Governed by ERISA*

As an initial matter, Plaintiff attempts to conflate the severance plan that was available to any management employee who was involuntarily terminated, except for cause, between January 1, 2004 and March 31, 2004, with Defendant's retirement plan, which, as amended, was available to any management employee who voluntarily retired between September 1, 2003, and January 1, 2004, after age fifty-two with twenty-eight years of service. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Memo") 8. The record does not support Plaintiff's position. In fact, the September 2003 amendment to the retirement plan specifically makes reference to a "targeted involuntary severance program" which is separate and apart from the plan and its amendments. Orlando Aff. Exhibit 1.

The determinative issue before the court is whether the severance plan is governed by ERISA. Pursuant to 29 U.S.C. § 1002, ERISA governs "employee benefit plan[s]" defined as an "employee welfare benefit plan," an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3). ERISA further defines an "employee welfare benefit plan" as

> . . . any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of

providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c)[2] of this title(other than pensions on retirement or death, and insurance to provide such pensions).

*Id; see also Massachusetts v. Morash,* 490 U.S. 107 (1989) ("[t]hus, for example, plans to pay employees severance benefits, which are payable only upon termination of employment, are employee welfare benefit plans within the meaning of the Act."). However, simply because severance plans, such as the type offered by KeySpan, can be covered by ERISA, does not necessarily mean that KeySpan's severance plan was governed by ERISA. *See James v. Fleet/Norstar Financial Group, Inc.,* 992 F.2d 463, 468-469 (2d Cir. 2003). For example, "A program that simply pays 'a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation'... is not a 'plan' " *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 737 (2d Cir. 2001) (*quoting James v. Fleet/Norstar Fin. Group, Inc.*).

The Second Circuit has set forth three factors for the court to consider in determining whether a severance package is an ongoing administrative scheme governed by ERISA, or is simply a one-time payment and not governed by ERISA. These factors are "(1) whether the employer's undertaking or obligation requires managerial discretion in its administration, (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits, and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Schonholz v. Long Island Jewish Medical Center,*

---

[2] Section 186(c) covers severance or other, similar, benefits.

87 F.3d 72 (2d Cir. 1996). Any individual factor is not determinative. *Schonholz,* 87 F.3d at 76. Rather, it is a combination of all three that determines whether a plan is governed by ERISA.

With respect to the first factor, Defendant concedes, and the court agrees, that the severance plan requires "managerial discretion" in its administration. Only employees who were involuntarily terminated and the termination was not "for cause" were entitled to the severance. A determination of which employees are terminated "for cause" requires managerial discretion. *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d at 737. Additionally, managers at KeySpan determined which positions to excise. *See Tischmann v. ITT/Sheraton*, 145 F.3d 561, 566-67 (2d Cir. 1998) (severance plan requiring, *inter alia*, individual determinations regarding eligibility constituted an ERISA plan); *Ebenstein v. Ericsson Internet Applications, Inc.*, 263 F. Supp. 2d 636, 642 (E.D.N.Y. 2003) (finding that an ERISA plan existed where "severance pay is not made in every case of separation, [and the] the policy requires administration to determine individual eligibility.").

However, the second and third factors clearly demonstrate that KeySpan's severance package was not governed by ERISA. With respect to whether a reasonable employee would perceive an ongoing commitment by the employer to pay benefits, the plan clearly states "separation allowance . . . shall be paid in a lump sum." Orlando Aff. Exhibit 5. A lump sum payment is not indicative of a continuing obligation to pay benefits. *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987). Moreover, unlike in cases such as *Tischmann v. ITT/Sheraton,* where the employee receiving severance was required to be available "to render services to the company under 'reasonable circumstances,'" 145 F.3d at 567, there is no such requirement here. *See Sheer v. Israel Discount Bank of New York,* 06 CV. 4995. 2007 WL 700822, *1 (S.D.N.Y. Mar. 7, 2007) (holding that a reasonable employee would not conclude the employer was making an "ongoing commitment"

to employees because all the severance plan required was that the employee leave the company); *Hijeck v. United Technologies Corp.*, 24 F. Supp. 2d 243, 251 (D. Conn. 1998) (no ERISA plan where the severance was offered in connection a reductions-in-force plan and the severance payments were intended to be paid out once in a lump sum). Other than being involuntarily terminated by KeySpan, nothing more is required for an employee to be (and remain) eligible for the lump sum payment. Finally, under KeySpan's plan, computing an employee's severance is simple arithmetic, and no ongoing scheme is necessary. *See Guccione v. Bell,* 06 CV. 492, 2006 WL 2032641, *3 (S.D.N.Y. July 20, 2006) (no ERISA governed plan where the employer was only required to make a one-time arithmetical calculation to determine the amount due and then was only required to pay that amount in a lump sum.).

The third and final factor also weighs in favor of finding that KeySpan's severance plan was not covered under ERISA. The severance plan did not require an individual analysis of each termination to determine whether a beneficiary remained eligible. Rather, under the terms of the severance plan, every management employee who was involuntarily terminated between January 1, 2004 and March 31, 2004 was eligible. No individual evaluation of each claim and each employee's status was necessary to obtain the payment. *See, e.g., Taverna v. Credit Suisse First Boston (USA), Inc.,* 02 CV. 5240, 2003 WL 255250, *3 (S.D.N.Y. Feb. 4, 2003) (no individual analysis necessary where discharged employees who were offered a separation agreement were entitled to the severance as long as they continued to work satisfactorily, but only until the termination date just two months away). There is no requirement that any management employee who receives the severance benefit do anything other than sign a release. Employees are not required to look for other jobs, be available to KeySpan to work as needed nor do anything else that would require an individualized

10

determination to receive benefits going forward. *See Schonholz v. Long Island Jewish Medical Center,* 87 F.3d at 76; *Giordano v. Thomson*, 438 F. Supp. 2d 35, 44 (E.D.N.Y. 2005).

The court finds that Defendant's severance plan is not governed by ERISA. Therefore Plaintiff has failed to set forth any federal cause of action in the complaint. Accordingly, the court lacks subject matter jurisdiction. *See e.g. Eckardt v. Wiebel Tool Co., Inc.,* 965 F. Supp. 357, 364 (E.D.N.Y. 1997).

*Whether Defendant Erred in Failing to Provide Defendant Severance Under the Plan*

Even assuming, *arguendo,* that, despite all evidence to the contrary, the plan was an ERISA plan, the Plaintiff has not demonstrated his entitlement to benefits. The court reviews Defendant's decision to deny Plaintiff benefits *de novo*. *See Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir. 1999).

It is undisputed that Plaintiff voluntarily retired, taking advantage of the Rule of 80 Amendment, in May 2004. In January 2005, Plaintiff requested the enhancement because his position had not been filled. *See* Plaintiff's Letter of January 20, 2005, annexed to Defs. Stat. of Facts as Exhibit 2. Plaintiff's request for severance was denied in a letter from Elaine Weinstein to Plaintiff dated February 23, 2005. *See* Exhibit 3 to Defs. Stat. Facts. Weinstein stated that Plaintiff's request was denied because "your previous position has not been filled, the reason is not because the position has been excised but rather that the area has gone through a major reorganization." *Id.*

Plaintiff's alleged entitlement to severance is based on the fact that his position has not been filled, not based on the fact that it has been excised. In fact, in his January 20, 2005 letter, Plaintiff stated that "my position *may be* eliminated in 2005" (emphasis added) implicitly conceding that,

eight months after Plaintiff had retired, the position still existed. Indeed, Defendant has presented evidence that it attempted to fill the position, even going so far as hiring two lower level employees to do the functions that were once done by Defendant. Pl. Stat. of Facts ¶¶ 9-10.

KeySpan's severance plan was designed to compensate management employees who were forced to resign, not management employees who left voluntarily and whose positions subsequently went unfilled. Here, the uncontested evidence indicates that, but for Plaintiff's voluntary retirement, Plaintiff would still be working at KeySpan in his former position or in another position if his had been eliminated because he was a valued employee. Plaintiff's decision to retire left KeySpan without a qualified employee in a necessary position. Therefore, Plaintiff's position was never eliminated and Plaintiff is not entitled to severance.

## III. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is granted. The complaint is dismissed without costs to either party.

SO ORDERED.

DATED: Brooklyn, New York
September 26, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge